UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re | Chapter 13 |
| David R. Bainer, Jr. and | Case No. 15-28344-svk |
| Lana M. Bainer, | |
| Debtors. | |

**DECISION AND ORDER ON OBJECTION TO CONFIRMATION**

The issue is whether the Chapter 13 debtors can modify the rights of the mortgage holder on their residence because the mortgage note is secured by collateral in addition to the residence. The parties have filed a stipulation of facts and letter briefs in support of their positions. (Dkt. Nos. 24, 25, 26.)

David and Lana Bainer (the "Debtors") filed their Chapter 13 petition on July 18, 2015. (Dkt. No. 1.) On September 8, 2009, the Debtors borrowed $131,541.67 from Great Lakes Credit Union (or its predecessor) ("Great Lakes"), secured by a mortgage on the Debtors' residence located in West Allis, Wisconsin (the "residence"). (Dkt. No. 26 at 1.) The mortgage note signed by the Debtors provides in all capital letters: "IN THE EVENT OF DEFAULT, BORROWER HEREBY PLEDGES ANY SHARES OR DEPOSITS, SHARE CERTIFICATES OR CERTIFICATES OF DEPOSIT NOW OR HEREAFTER HELD BY PROMISOR IN THIS CREDIT UNION AS ADDITIONAL SECURITY FOR THE PAYMENT OF THIS OBLIGATION." (*Id.*) The Truth-in-Lending Disclosure form executed in connection with the transaction confirmed the Debtors' pledge of "Any money you have on deposit with the Credit Union at the time of default . . ." (*Id.*) At the time of the mortgage loan, the Debtors had multiple deposit accounts at Great Lakes, dating back to an account opened in 1991. (*Id.* at 2.) The Debtors opened one of the accounts on September 8, 2009, in connection with the mortgage loan transaction. (*Id.*) The Debtors defaulted on the mortgage loan when it matured on September 8,

2014.  (*Id.*)  At that time, the Debtors had accounts with Great Lakes, and, as of the date of the petition, the Debtors continued to have accounts at Great Lakes, with balances of $0.25 and $5.00.  (*Id.*)

The Debtors' Chapter 13 plan proposes to reduce the amount of Great Lakes' claim to the value of the residence, $100,000.00, and to pay that amount with interest at 4.5% over the five-year term of the plan. (Dkt. No. 12 at 4.)  The balance of the claim, approximately $52,000.00, will be treated as an unsecured claim.  Great Lakes filed an Objection essentially claiming that the Debtors' plan impermissibly sought to modify Great Lakes' secured claim.  (Dkt. No. 19.)

Bankruptcy Code § 1322(b)(2) prohibits modification of a secured claim when the secured claim is secured *only* by a lien on the debtor's principal residence.  In this case, in addition to the residence, the mortgage note provides that the Debtors' shares, deposits and certificates of deposit also serve as collateral.

The Debtors argue that the inclusion of this additional collateral takes Great Lakes' claim outside of the anti-modification provision of § 1322(b)(2).  They cite *In re Libby*, 200 B.R. 562, 567 (Bankr. D.N.J. 1996), in which a lender's mortgage note was secured by "all money, securities and other personal property on deposit or in [the lender's] possession or control."  The lender argued that there were no such accounts (other than a tax escrow account, which did not disqualify the loan).  But the court found that the existence of the accounts was not dispositive; rather, the issue is whether the creditor's loan documents "attempted to reach collateral beyond that of the primary residence."  *Id.*  Since the loan documents provided for the additional security, the court concluded that the debtors could modify the mortgage.  *Id.* at 568.

Great Lakes cites *In re Etchin*, 128 B.R. 662 (Bankr. W.D. Wis. 1991), a case that preceded the Supreme Court's decision in *Nobelman v. American Sav. Bank*, 508 U.S. 324 (1993).  *Nobelman* confirmed that § 1322(b)(2) prohibits modification where the lender's claim

-2-

is secured only by a lien on the debtor's principal residence. *Id.* at 332. The mortgage notes in *Etchin* and *Nobelman*, were secured solely by the debtors' residences. This case is different: the mortgage note is also secured by the Debtors' deposit accounts with Great Lakes.

Great Lakes also argues that the *de minimis* account values do not disqualify the claim from anti-modification treatment under § 1322(b)(2). And it observes that, despite the Debtors' default, Great Lakes never applied the account balances to the amount due on the mortgage note. Similar arguments were made and rejected in *Libby*, *supra.* In another case, *In re Bosch*, 287 B.R. 222 (Bankr. E.D. Mo. 2002), a creditor made loans secured by the assets of the debtors' business and the debtors' residence. The business failed, and the debtors liquidated the business assets. They then filed a Chapter 13 petition and a plan proposing to strip down the creditor's claim on the residence to the extent it was unsecured. The creditor objected, noting that, as of the petition date, the residence was the only collateral available. The court held that the claim could be modified, because: "The focus of a section 1322(b)(2) inquiry is on the language of the agreement 'regardless of the existence or value of the collateral which is available to secure creditor's claims as of the time of filing the petition.'" *Id.* at 226. (quoting *In re Howard*, 220 B.R. 716, 718 (Bankr. S.D. Ga. 1998)).

This Court agrees. As of the date of the petition, the operative loan documents provided Great Lakes with collateral in addition to the residence. The existence or the value of that additional collateral is immaterial. Great Lakes' claim is not secured only by the Debtors' principal residence; it is secured by the accounts in addition to the residence. Therefore, § 1322(b)(2) does not apply to prevent modification of Great Lakes' claim.

Case 15-28344-svk    Doc 27    Filed 01/11/16    Page 3 of 4

IT IS THEREFORE ORDERED:  the Objection of Great Lakes Credit Union to confirmation of the Debtors' Plan is overruled, and the Plan may be confirmed.

Dated: January 11, 2016

By the Court:

*Susan Kelley*
Susan V. Kelley
Chief U.S. Bankruptcy Judge

-4-